NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**HUDSON FURNITURE, INC., BARLAS BAYLAR,**
*Plaintiffs-Appellees*

**v.**

**ALAN MIZRAHI, DBA ALAN MIZRAHI LIGHTING, LIGHTING DESIGN WHOLESALERS INC.,**
*Defendants-Appellants*

———————————

2022-1290

———————————

Appeal from the United States District Court for the Southern District of New York in No. 1:20-cv-04891-PAC-RWL, Senior Judge Paul A. Crotty.

———————————

Decided:  November 16, 2022

———————————

PATRICK HINES, Hodgson Russ LLP, Buffalo, NY, for plaintiffs-appellees.  Also represented by NEIL BRYAN FRIEDMAN, New York, NY.

ROBERT L. GREENER, Law Office of Robert L. Greener, New York, NY, for defendants-appellants.

———————————

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges*.

MOORE, *Chief Judge*.

Alan Mizrahi, dba Alan Mizrahi Lighting and Lighting Design Wholesalers, Inc., appeals a Southern District of New York decision denying Mizrahi's motion for reconsideration of a decision granting Hudson Furniture, Inc. and Barlas Baylar's (collectively, Hudson) motion for alternative service, denying Mizrahi's motion to dismiss for lack of personal jurisdiction, and granting Hudson's motion for a preliminary injunction. For the following reasons, we affirm.

## BACKGROUND

Barlas Baylar is the CEO and Creative Director of Hudson Furniture, which is a manufacturer, designer, and retailer of high-end lighting designs and furniture. J.A. 170–71. Hudson owns multiple design patents and trademarks relating to its lighting designs and promotes its products with copyrighted pictures of its designs. J.A. 2–3. Mizrahi, who was last known to reside in Austria, is a web-based lighting and furniture designer and wholesaler who advertises and sells his products on several websites. J.A. 350–51; 494–95.

Mizrahi does not dispute that his websites contain numerous infringing photos of Hudson's products and list lighting products that use Hudson's trademarks. Appellant's Opening Br. at 29. He alleges, however, that his use of the photos and trademarks is lawful because he gives credit to Hudson by noting on his website that certain products were designed by Hudson. J.A. 350–51. And if a customer purchases a Hudson product from one of his websites, Mizrahi then purchases the piece directly from Hudson as a wholesaler. J.A. 351.

After discovering Mizrahi's websites and that Mizrahi sold an unauthorized replica of one of its lighting fixtures

to a third party, Hudson sued Mizrahi for, *inter alia*, copyright, trademark, and patent infringement. J.A. 42–43. Immediately thereafter, Hudson filed a motion for a preliminary injunction to enjoin Mizrahi's use of its copyrighted photographs and prevent him from selling the infringing fixtures.

Because Hudson did not know Mizrahi's whereabouts, Hudson determined alternative service was the best means to serve its complaint. Prior to seeking leave for alternative service, Hudson contacted Robert Greener, Mizrahi's United States counsel, to determine if he would accept service on Mizrahi's behalf. J.A. 305. After speaking with Mizrahi, Greener informed Hudson he was not authorized to accept service on Mizrahi's behalf. J.A. 304–05. Hudson then filed an *ex parte* motion for leave to serve Mizrahi, believed to reside in Austria, by alternative service under Federal Rule of Civil Procedure (FRCP) 4(f)(3). Specifically, Hudson requested to serve Mizrahi via RPost email to a list of email addresses known to be used by Mizrahi and by mail to Greener. Hudson notified Greener of the motion, J.A. 463–64; 516–17, and Greener did not oppose. The court granted leave to serve process by alternative means, and Hudson served the papers on Greener by mail and used RPost to send the papers to 14 email addresses associated with Mizrahi.

Mizrahi sought reconsideration of the order granting alternative service and sought to dismiss the claims for lack of personal jurisdiction under FRCP 12(b)(2) for improper service. Mizrahi also opposed the motion for a preliminary injunction. The district court did not reconsider the motion for alternative service, denied the motion to dismiss, and granted the motion for a preliminary injunction as to Hudson's trademarks and copyrights. J.A. 1–19. Mizrahi appealed to the Second Circuit. The Second Circuit transferred the case to us as it involves an underlying patent dispute. We have jurisdiction under 28 U.S.C. § 1292(c)(1).

4                    HUDSON FURNITURE, INC. v. MIZRAHI

DISCUSSION

Mizrahi first argues the district court erred in not reconsidering the motion for alternative service because it presented new information and case law not considered in the district court's original decision.  Next, Mizrahi argues the court erred in not dismissing the claims for lack of personal jurisdiction because alternative service was improper.  Finally, Mizrahi argues the district court should not have granted a preliminary injunction because Hudson did not establish it would suffer irreparable harm.  We do not agree.

I

For non-patent issues, we apply the law of the regional circuit.  *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1370 (Fed. Cir. 2010).  Here, Second Circuit law applies.  The Second Circuit reviews a district court's decision on a motion for reconsideration de novo.  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013).  The standard for granting a motion for reconsideration is high, "and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Mizrahi argues the district court should have granted reconsideration because Mizrahi presented new information and cited substantial case law from other jurisdictions regarding alternative service in Austria.  However, nothing submitted by Mizrahi could reasonably be expected to change the court's conclusion.  The information submitted by Mizrahi was not in any sense new.  Mizrahi merely filed an affidavit challenging the implications of the evidence submitted by Hudson. J.A. 418–20; 344–50.  Further, Mizrahi did not cite any *controlling* decisions the court overlooked.  Mizrahi's arguments should have been

filed in an opposition to the motion, which Mizrahi opted not to file. Thus, Mizrahi failed to meet the high standard necessary for reconsideration. The court did not err in declining to reconsider the motion.

## II

The Second Circuit reviews a district court's decision on dismissal for lack of personal jurisdiction de novo. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). However, we are not aware of any decision in which the Second Circuit has determined the standard of review applicable to the district court's grant of alternative service under FRCP 4(f). We therefore proceed based on how the Second Circuit would likely review this issue. The Second Circuit has aligned itself with other circuits by adopting an abuse of discretion standard when reviewing other issues arising under FRCP 4. *See Thompson v. Maldonado*, 309 F.3d 107, 110 (2d Cir. 2002) ("Although we have not previously determined the standard of review applicable to [FRCP] 4(m) dismissals for failure to serve process, we join our sister circuits in reviewing such dismissals for abuse of discretion."). Other circuits have similarly adopted an abuse of discretion standard when reviewing district court decisions on alternative service under FRCP 4(f)(3). *See Freedom Watch, Inc. v. OPEC*, 766 F.3d 74, 78 (D.C. Cir. 2014); *Prewitt Enterprises, Inc. v. OPEC*, 353 F.3d 916, 921 (11th Cir. 2003); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Thus, we conclude the Second Circuit would review whether the grant of alternative service was proper under an abuse of discretion standard.

The decision to allow alternative service on a foreign defendant under FRCP 4(f)(3) "is committed to the sound discretion of the district court." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (quoting *RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512, 2007 WL 1515068, at *1 (S.D.N.Y. May 24,

2007)).  Mizrahi argues that a plaintiff must show it has attempted service by conventional means before alternative service is permitted.  We do not agree.  While some courts have required such a showing, others have not. *Compare Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) ("whether to exercise discretion and grant alternative service requires courts to evaluate . . . a showing that the plaintiff has reasonably attempted to effectuate service on the defendant"), *with In re BRF S.A. Sec. Litig.*, 2019 WL 257971, at \*2 (S.D.N.Y. Jan. 18, 2019) ("In deciding whether to . . . permit alternative service under Rule 4(f)(3), some courts have looked to whether . . . the plaintiff has reasonably attempted to effectuate service on the defendant" (quoting *Devi v. Rajapaska*, No. 11 Civ. 6634, 2012 WL 309605, at \*1 (S.D.N.Y. Jan. 31, 2012))); *see also In re GLG Life Tech. Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Inasmuch as Rule 4(f)(3) calls upon a court to exercise its discretion . . . each case must be judged on its facts.").  We conclude no such blanket requirement exists.  The district court properly considered the evidence submitted by Hudson and determined that Hudson showed sufficient cause for alternative service.

While granting alternative service is within the discretion of the district court, alternative service must not violate an international treaty or constitutional due process. *Rio Props., Inc.*, 284 F.3d at 1014–15.  Here, the district court's grant of alternative service does neither.  At the time the district court granted alternative service, there was no relevant international treaty in place with Austria, where Mizrahi was believed to be residing.  Mizrahi argues that alternative service violated the Hague Convention, but Austria did not ratify the Hague Convention until after the time of service.  J.A. 8.  While Mizrahi also argues that service by email was improper because it violated Austrian law, alternative service under FRCP 4(f)(3) "may be

accomplished in contravention of the laws of the foreign country." *Rio Props., Inc.*, 284 F.3d at 1014.

The means of alternative service also provided Mizrahi adequate constitutional notice. To meet this requirement, service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Hudson showed that Greener represented Mizrahi in a similar litigation before the same court and was presently in contact with Mizrahi. J.A. 298–306. Hudson also provided an affidavit from Mizrahi that he personally used two of the emails used for service. J.A. 292. RPost confirmed that 12 of the email addresses opened the communications, including the two Mizrahi admitted to using, and three of the addresses downloaded the papers. J.A. 498–514. Further, after service, Mizrahi appeared and challenged the grant of alternative service and the motion for a preliminary injunction, showing actual notice of the litigation.

We conclude that the district court did not abuse its discretion in granting alternative service and did not err in denying Mizrahi's motion to dismiss for lack of personal jurisdiction.

## III

We now turn to the district court's grant of a preliminary injunction against Mizrahi's use of Hudson's copyrights and trademarks. The Second Circuit reviews the grant of a preliminary injunction for abuse of discretion. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012). Under an abuse of discretion standard, factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011). A district court may grant a preliminary injunction when a plaintiff demonstrates: (1) a likelihood of success on the merits; (2) irreparable harm in the

absence of an injunction; (3) the balance of hardships tips in its favor; and (4) issuance of the injunction serves the public interest. *Id.* Mizrahi challenges the district court's decision only as to the second factor: whether Hudson established irreparable harm.

The district court found that Hudson would suffer irreparable harm without an injunction because the ongoing sale of unauthorized replicas causes harm to its brand, reputation for craftsmanship, and consumer goodwill. J.A. 15. Customers seeking to purchase Hudson lights will be misled into purchasing counterfeit products, which may be offered at lower prices on Mizrahi's website. *Id.* And consumers will not know they are purchasing unauthorized products because Mizrahi is using Hudson's copyrighted images and marks to deceive customers. *Id.* Mizrahi argues that Hudson failed to establish irreparable harm because it did not show any proof of actual consumer confusion or loss of customers. Mizrahi also attempts to discredit Hudson's evidence that Mizrahi sold a chandelier purporting to be Hudson's product because it came from a third-party who did not submit an affidavit. We see no clear error in the district court's finding that, based on Mizrahi's sale of an allegedly counterfeit Hudson chandelier, Hudson would suffer irreparable harm without a preliminary injunction. Thus, the district court did not abuse its discretion when granting the preliminary injunction.

## CONCLUSION

Because the district court did not err in denying Mizrahi's motion for reconsideration and motion to dismiss and the court did not abuse its discretion in granting a preliminary injunction, we affirm.

## **AFFIRMED**

### COSTS

Costs to Hudson.